IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE HARTFORD CASUALTY<br>INSURANCE COMPANY | * | |
| | * | |
| Plaintiff, | * | Civil Action No.: RDB 04-3513 |
| v. | * | |
| CITY OF BALTIMORE, | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On January 4, 2004, a water main that was between 93 and 99 years old ruptured and caused flooding at 210 E. Lexington Street in Baltimore, Maryland. This property was insured by The Hartford Casualty Insurance Company, a Connecticut company ("Hartford" or "Plaintiff"), who made payments to its insured in the amount of $561,309.02 for water damages caused by the flooding. Plaintiff subsequently filed a complaint in this subrogation action against the City of Baltimore (the "City" or "Defendant"), alleging that Defendant failed to properly maintain the water main. Pending before this Court is Defendant's Motion for Summary Judgment. This Court has jurisdiction under 28 U.S.C. § 1332. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted). Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## DISCUSSION

**I.  Background.**

On January 4, 2004, a water main broke and caused flooding at 210 E. Lexington Street. The water main consisted of 20-inch cast-iron pipe that was buried beneath the street. The pipe was 93-99 years old and did not have a history of prior breaks.[1] The water main was composed of cast-iron pipe that has an average useful life of 120 years.

On November 2, 2004, Hartford filed a complaint against the City. The only cause of action asserted in Hartford's complaint is one for negligence. On July, 13, 2005, the City filed its Motion for Summary Judgment.

**II.  Motion for Summary Judgment.**

As the source of this Court's jurisdiction over this case is based on diversity of citizenship, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of Maryland to questions of substantive law. Under Maryland law, a cause of action in negligence requires that the plaintiff show: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered actual

---

[1] The parties agree that the exact age of the water main is impossible to determine. Existing records, however, indicate that the water main on E. Lexington Street was installed between 1905 and 1911. (*See* Def's Mtn. p. 1 n.1; Pl's Opp'n p. 6 n.3.)

injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.  *See*, *e.g.*, *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994) (citations omitted).  This Court's analysis of Hartford's negligence claim against the City will be guided accordingly.

The City contends that it cannot be held liable in negligence for a defective water main under its control unless it had actual or constructive notice of the defective condition.  The requirement of actual or constructive notice—which Hartford does not dispute—is well-established by Maryland decisions concerning other defective conditions of a street.  *See*, *e.g.*, *Smith v. City of Baltimore*, 846 A.2d 1121, 1125 (Md. Ct. Spec. App. 2004) ("If, however, a person is injured because a municipality failed to maintain its streets, and the municipality had actual or constructive notice of the dangerous condition that caused the injury, the municipality may be held liable in negligence.") (citations omitted); *Weisner v. Mayor and Council of Rockville*, 225 A.2d 648, 650 (Md. 1967) ("[I]n order to hold a municipal corporation liable for injuries caused by its alleged negligence in failing to keep sidewalks under its control free of dangerous conditions, including accumulations of ice and snow, the plaintiff must show that the municipality had either actual of constructive notice of such condition . . . .") (citation omitted); *Neuenschwander v. Washington Suburban Sanitary Comm'n*, 48 A.2d 593, 596 (Md. 1946) ("But a municipal corporation is not liable for injuries caused by the defective condition of a street, unless it is shown that it had actual or constructive notice of such condition."), *overruled on other grounds by statute as stated in Arnold v. Prince George's County*, 311 A.2d 223 (Md. 1973).

The City points out that there is no evidence that it had *actual* notice of the defective water main on E. Lexington Street.  Although Hartford alleges in its responsive motion that the

City had actual notice, (*see* Pl's Mtn at 1.), it retreats from that position in its substantive submissions to the Court.  There is simply no evidence of actual notice and, accordingly, this Court finds that no such actual notice existed.  *See*, *e.g.*, *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (nonmoving party must set forth specific facts demonstrating a genuine issue for trial to resist summary judgment).

The City also argues that no evidence exists to suggest that it had *constructive* notice of the defective water main.  Constructive notice occurs when "the defect has become known and notorious to those traveling the street, and there has been full opportunity for the municipality through its agents charged with that duty, to learn of its existence and repair it. . . ."  *Smith*, 846 A.2d at 1125 (quoting *Keen v. City of Havre de Grace*, 48 A. 444 (Md. 1901)).  A municipality is charged with constructive notice when the evidence shows that—as a result of the "nature" of a defective condition or the "length of time it has existed"—the municipality would have learned of its existence by exercising reasonable care.  *Id*.

Even viewing the facts in the light most favorable to Hartford, a reasonable jury could not find that the "nature" of the defective water main or the "length of time it [] existed" would have led the City to discover this condition.  It is undisputed that the water main was buried beneath the street and suffered no breaks before January 4, 2004.  There is no evidence to suggest that the area of pipe around the break was corroded or had been decaying for an extensive period of time.  There is also no evidence to suggest a history of structural problems or other defects.  In sum, the evidence presented by the parties indicates that the "bad condition" at issue here was neither readily observable from its mere existence nor had existed for a sufficient length of time that it would have been detected by or reported to the City.  Accordingly, Hartford has not shown that the City had constructive notice and has failed to provide adequate evidence

of sufficient probative force to create a genuine issue of material fact.[2]

This Court rejects the argument that knowledge of the average useful age of the water main on E. Lexington Street obligated the City to replace or otherwise protect that pipe. Armed with the general knowledge that cast-iron pipes like the one at issue have an average useful age of 120 years, Hartford argues that the City has a duty "to replace or repair the cast iron mains as set forth in the AWWA Publication.". (*See* Pl's Opp'n pp. 6-7 (quoting publication from the American Water Works Association ("AWWA")).) This argument fails for two reasons. First, the AWWA Publication upon which Hartford relies provides that cast-iron pipes "on average [] need to be replaced *after* they have been in the ground about *120 years*." (*Id*. at p. 6 (emphasis added).) Given the undisputed fact that the water main at E. Lexington Street was only 93-99 years old when it broke, the City could have reasonably expected this particular pipe to remain in service for another 20 years.

Second, Hartford's argument ignores that detecting potential defects in water mains through, for example, eddy current and other testing is unreasonable because these kinds of tests are "not economically feasible." (Pl's Opp'n p. 4 (quoting deposition testimony of the City's expert Mr. Butler).) It is not the function of this Court to impose public policy upon the Mayor

---

[2] Under factual circumstances that are indistinguishable from this case, the Supreme Court of Washington found that instructing the jury under the doctrine of *res ipsa loquitur* was proper. *See Pacific N.W. Bell Tel. Co. v. Port of Seattle*, 491 P.2d 1037, 1041 (Wash. 1972). This Court respectfully disagrees with the approach taken in the *Pacific N.W. Bell* case. "[I]n order for the doctrine of *res ipsa loquitur* to be applicable, plaintiff must prove, by a preponderance of the evidence . . . [a] casualty of a sort that usually does not occur in the absence of negligence on the part of someone. . . ." *Vito v. Sargis & Jones, Ltd.*, 672 A.2d 129, 134 (Md. Ct. Spec. App. 1996), *aff'd*, 672 A.2d 129 (Md. 1996). In this case, however, the parties have forecast no evidence to suggest that a ruptured water main some 93-99 years old is a casualty that usually does not occur in the absence of negligence. *See I.M. of Atlantic City v. Dist. of Columbia*, 356 F.Supp. 487, 491 (D.D.C. 1973) ("A municipality is not an insurer against damages from broken water mains but must be held only to the same standard of 'due care' applicable to individuals and other corporations.").

and City Council of Baltimore. It is simply economically unfeasible to expect the City to dig up water lines in areas where there have been no indications of any leaks or problems. Other courts have reached the same conclusion in factually similar cases. *See Grace & Co. v. City of Los Angeles*, 168 F.Supp. 344, 349 (S.D.Cal. 1958) ("Although it might have been desirable to make an inspection of the water lines every two or three years, such inspection would be prohibitively expensive and economically unfeasible. The City, like individuals, is required to take only reasonable precautions."), *aff'd*, 278 F.2d 771 (9th Cir. 1960);[3] *I.M. of Atlantic City v. Dist. of Columbia*, 356 F.Supp. 487, 491-92 (D.D.C. 1973) ("[G]iven the expense and high inconvenience of digging up the main, and given the inspection-per-number-of-breaks rate of other jurisdictions, the District of Columbia's policy of allowing a quota of one break per mile per year appears reasonable and not a breach of due care.").

## CONCLUSION

There is simply no genuine issue of material fact and the Defendant City of Baltimore is entitled to the entry of summary judgment as a matter of law. Accordingly, for the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED. A separate Order and Judgment follows.

Dated: March 7, 2006                                /s/
                                                    Richard D. Bennett
                                                    United States District Judge

---

[3] *Cf.* Gregory C. Keating, *Calabresi's The Costs of Accidents: A Generation of Impact on Law and Scholarship*, 64 Md. L. Rev. 159, 211 n.154 (2005) (arguing that insignificant risks should sometimes be tolerated when cost of eliminating all risks is high) (citing *Grace & Co.*, 168 F.Supp. at 349).